IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GRATZ COLLEGE,**<br>　　　　　　　　**Plaintiff,**<br>　v.<br>**SYNERGIS EDUCATION INC.,**<br>　　　　　　　　**Defendant.** | CIVIL ACTION<br>NO. 14-06966 |

## MEMORANDUM

PAPPERT, J.                                                                                       October 5, 2015

　　　　Plaintiff Gratz College ("Gratz") brings this action for breach of, and tortious interference with, contract for the alleged failure of Defendant Synergis Education, Inc. ("Synergis") to provide certain services under an Academic Program Services Agreement ("APSA"). Synergis brings counterclaims for breach of contract ("Count I"), breach of good faith and fair dealing ("Count II"), and fraudulent misrepresentation ("Count III"). Gratz moves to dismiss Counts II and III of Synergis's Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Gratz's Motion to Dismiss is granted in part and denied in part.

### I.

　　　　Synergis and Gratz entered into the APSA on January 24, 2013. (Def.'s Amended Counterclaim ("Def.'s Amend. Countercl."), ECF No. 50, ¶ 11.) Under the APSA, Synergis was required to assist Gratz in developing its adult learning programs. (*Id*.) In return, Gratz was to retain Synergis as its exclusive contractor for managing those programs, and remit to Synergis a portion of enrollment fees generated by the partnership. (*Id*.) Synergis alleges that throughout 2013 and 2014, Gratz presented numerous challenges to implementing the objectives of the APSA. (*Id*. at ¶ 12.)

1

Section 9.5 of the agreement states that "In the event of the occurrence of any fact or circumstance relating to an Event of Deteriorating Institution Condition, Institution shall immediately provide notification of such occurrence to Synergis, and Institution shall use its commercially reasonable efforts to cooperate with Synergis … to establish and implement a contingency plan to avoid disruption of Services." (*Id*. at ¶ 33.)  Under Section 2.14, an Event of Deteriorating Institution Condition is defined, in relevant part, as any of the following events: "(f) there is a material adverse change in Institution's business, financial condition or prospects that it is reasonably likely to result in a delay in the performance of Institution's obligations hereunder, or a reduction in the quality of such performance; (g) Institution enters a downgraded status with an Accrediting Agency which will adversely effect Institution's ability to administer Title IV funds and/or is likely to result in a delay in the performance of Institution's obligations hereunder or a reduction in the quality of such performance." (*Id*. at ¶ 31-32.)

In June of 2013, Gratz submitted a routine self-evaluation report to the Middle States Commission on Higher Education ("MSCHE"). (*Id*. at ¶ 19.)  MSCHE is Gratz's accrediting agency, and has the power to administer and oversee Gratz's accreditation programs. (*Id*. at ¶ 23.)  In order to remain eligible to receive federal student financial aid under Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1001 et seq.), Gratz must retain its accreditation status with MSCHE. (*Id*.)  In July of 2013, MSCHE submitted a report identifying that Gratz was likely out of compliance with almost half of MSCHE's accreditation standards. (*Id*. at ¶¶ 19-20.)  Synergis alleges that this report indicated to Gratz that MSCHE would likely issue a non-compliance action against Gratz. (*Id*. at ¶ 19.)  Synergis alleges Gratz did not disclose this report as it was required to do under Sections 2.14 and 9.5 of the APSA. (*Id*.)

On November 13, 2013, Gratz's counsel sent a letter to Synergis, asserting that Synergis was in breach of the APSA and demanding performance. (*Id*. at ¶ 37.) The letter alleged that Synergis had failed to complete any work under the APSA and missed contractual deadlines. (*Id*. at ¶ 38.) Synergis alleges that these accusations were false and were intended to induce Synergis into expending resources. (*Id*. at ¶ 39.)

On November 21, 2013, MSCHE placed Gratz on probation for being out of compliance with four accreditation standards: (1) Institutional Resources; (2) Institutional Assessment, (3) General Education, and (4) Assessment of Student Learning. (*Id*. at ¶ 20.) MSCHE "places an institution on probation when … the institution is not in compliance with one or more Commission standards and … the non-compliance is sufficiently serious, extensive, or acute that it raises concern about one or more of the following:  1. the adequacy of the education provided by the institution;  2. the institution's capacity to make appropriate improvements in a timely fashion;  or 3. the institution's capacity to sustain itself in the long term." (*Id*. at ¶ 24.) Synergis alleges Gratz never disclosed the probation ruling as it was required to do under Sections 2.14 and 9.5 of the APSA. (*Id*. at ¶ 34.)

Additionally, Synergis alleges that in January of 2014, Gratz's President Joy Goldstein was informed that Anne Arundel County Public Schools ("AACPS") of Maryland was considering not renewing its Memorandum of Understanding with Gratz. (*Id*. at ¶ 42.) AACPS supplied a large percentage of Gratz's total enrollment and fee based revenue. (*Id*.) Synergis contends that after learning of Gratz's probation, AACPS expressed concern about encouraging its teachers to enroll in Gratz's programs. (*Id*.) Synergis alleges that Gratz never told it about the uncertain status of the AACPS situation. (*Id*.) Synergis independently discovered Gratz's probation on July 14, 2014. (*Id*. at ¶ 41.) Synergis terminated the agreement that day. (*Id*.)

3

## II.

Gratz now moves to dismiss Counts II and III of Synergis's Amended Counterclaim for failure to state a claim pursuant to Rule 12(b)(6).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts must "take as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).  However, the Court "need not credit a [party's] 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

To withstand a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  *Fowler*, 578 F.3d at 210-11 (citation omitted).  A motion to dismiss will be granted if the factual allegations in the complaint are insufficient "to raise the right of relief above the speculative level."  *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.

Gratz moves to dismiss Synergis's claim for breach of good faith and fair dealing (Count II), contending that it arises out of the same conduct alleged in Synergis's breach of contract

4

claim. (Pl.'s Motion to Dismiss, ECF No. 52, pg. 24.) Gratz contends that an independent claim for breach of the implied covenant is barred under Pennsylvania law. (*Id*.) Synergis alleges that Gratz "breached its implied duty of good faith and fair dealing by wrongfully claiming that Synergis was in default of the APSA while knowing and concealing from Synergis that MSCHE had downgraded it to probationary status." (Def.'s Amend. Counter., ¶ 55.)

Generally, "Pennsylvania law would not recognize a claim for breach of [the] covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim [if] the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim." *McHale v. NuEnergy Grp.*, No. CIV.A. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002); *see also King of Prussia Equipment Corp., v. Power Curbers, Inc.*, 158 F. Supp. 2d 463, 466-67 (E.D. Pa. 2001); *Northview, Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78 (3d Cir. 2000). Additionally, the "prevailing rule in Pennsylvania is that a claim alleging a breach of the covenant of good faith must be pled as a breach of contract claim." *Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 594 (E.D. Pa. 2011) (referencing *McHolme/Waynesburg, LLC v. Wal–Mart Real Estate Business Trust*, No. 08–961, 2009 WL 1292808 (W.D. Pa. May 7, 2009)).

Synergis's breach of good faith and fair dealing claim alleges actions outside those that form the basis of its breach of contract claim. Synergis alleges that Gratz's November 13th letter was issued in bad faith in an attempt to have Synergis invest time and resources into Gratz. Specifically, Synergis alleges that "Gratz College's … claim that Synergis was in default was a pretext, motivated by Gratz College's desire that Synergis fund program management and system improvements that it hoped would rescue it from the precarious situation it found itself in with its

5

accreditor." (Def.'s Amend. Counter., ¶ 56.)  Synergis contends that "Gratz had no factual basis for asserting … that Synergis was in default." (*Id*.)

These allegations are not "merely a restatement of the allegations contained in the breach of contract claim." *Wulf*, 798 F. Supp. 2d at 594.  In *Wulf*, the plaintiff's breach of good faith and fair dealing count contained bad faith allegations separate from those contained in the breach of contract count.  *Id*.  Rather than require a formal amendment, the *Wulf* Court dismissed the breach of good faith and fair dealing claim.  It then subsumed those allegations into the breach of contract count.  *Id*. at 594-595; *see also JHE, Inc. v. Se. Pennsylvania Transp. Auth.*, No. 1790 NOV.TERM 2001, 2002 WL 1018941, at *6 (Pa. Com. Pl. May 17, 2002) (finding breach of the covenant of good faith is subsumed into breach of contract claim).

Therefore, the Court grants dismissal of Synergis's breach of good faith and fair dealing claim as an independent cause of action.  However, the breach of contract claim (Count I) should be construed as also containing the allegations under the now dismissed breach of good faith and fair dealing claim (Count II).

## IV.

Gratz moves to dismiss Synergis's claim for fraudulent misrepresentation (Count III), first contending that it is barred by the gist-of-the-action doctrine.  The gist-of-the-action doctrine "generally bars fraud claims in cases where a [party's] alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to fraud." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009).  The Pennsylvania Supreme Court formally adopted the gist-of-the-action doctrine in *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014).  The *Bruno* Court noted that the "general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature

of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Id*. at 68.

Courts have generally held that the gist-of-the-action doctrine does not bar fraudulent misrepresentation claims alleging fraud in the inducement. "This is because fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists." *Air Products & Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) (referencing *Foster v. Northwestern Mutual Life*, No.Civ.A. 02–2211, 2002 WL 31991114, **2–4, (E.D. Pa. July 25, 2002) ("Plaintiff may show that he [was fraudulently induced into agreeing to the contract terms]. Such a showing would implicate the 'larger social policies' of a tort action (e.g., society's desire to avoid fraudulent inducement in the employment context), and would justify extending this case beyond the contractual allegations.")).

Additionally, fraudulent inducement claims have survived outside the typical situation where a party was induced to *enter into* the contract. Indeed, "[c]ourts have generally held that the gist-of-the-action doctrine does not apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 725 (E.D. Pa. 2014) (citing *Greater Phila. Health Servs. II Corp. v. Complete Care Servs.*, L.P., No. Civ.A.2387, 2000 WL 33711052, at *2 (Pa. Com. Pl. Nov. 20, 2000)); *see also Fox's Foods, Inc. v. Kmart Corp.*, 870 F.Supp. 599, 609 (M.D. Pa.1994) (denying summary judgment on fraud claim, among other reasons, because the complaint alleged that the defendant intentionally made

7

false assurances about its performance under a contract in order to keep the plaintiff from asserting its contractual rights against the defendant).

The analysis in *Synthes* applies here.  Taken as true, Synergis's allegations establish that Gratz "not only breached the contract, but also made misrepresentations about the breach with the intent to deceive" Synergis into "continu[ing] the contractual relationship" and declining "to assert its contractual rights against the defendant." *Synthes*, 25 F. Supp. 3d at 725.  Specifically, Synergis alleges that "Gratz deliberately concealed its probationary status with MSCHE from Synergis so that Synergis would continue to invest substantial funds, energy and resources into developing Gratz College's adult learning programs." (Def.'s Amend. Countercl., ¶ 61.)  It further alleges Gratz "concealed its probationary status because it was aware that it would lose the benefits of Synergis's investments once Synergis was made aware of its probationary status." (*Id*.)  Additionally, Synergis contends that "Gratz's failure to notify Synergis that the AACPS MOU was in jeopardy was a deliberate attempt to fraudulently conceal the MSCHE probation and its material impact on Gratz's financial situation from Synergis." (*Id*. at ¶ 62.)  Synergis thus alleges that Gratz not only breached its contractual duty to notify, but also intended to ensure that Synergis would continue to invest significant amounts of money rather than exercise its termination rights under the contract.

For purposes of a Rule 12(b)(6) motion, the Court must "take as true all the factual allegations of the [counterclaim] and the reasonable inferences that can be drawn from them." Taking the allegations as true, Synergis alleges facts sufficient to establish that Gratz made misrepresentations about its breach with the intent to deceive Synergis.  The gist-of-the-action doctrine does not bar Synergis's fraudulent misrepresentation claim.

**V.**

Gratz alternatively contends that Synergis's fraudulent misrepresentation claim is barred by the economic loss doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). "The gist-of-the-action doctrine and the economic loss doctrine are closely related and at times are used interchangeably." *Howe v. LC Philly, LLC*, No. CIV.A. 10-5495, 2011 WL 1465446, at *3 (E.D. Pa. Apr. 15, 2011); *see also Air Products*, 256 F. Supp. 2d at 340 (finding that the economic loss doctrine serves the same underlying purpose as the gist-of-the-action doctrine); *Pediatrix Screening, Inc. v. Telechem International, Inc.*, 602 F.3d 541, 544 at n. 3 (3d Cir. 2010) (noting that the parties used gist-of-the-action and economic loss doctrines interchangeably).

The Third Circuit in *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675 (3d Cir. 2002) "predicted that the Pennsylvania Supreme Court would apply the economic loss doctrine to claims of intentional fraud." *Air Products*, 256 F. Supp. 2d at 337 (E.D. Pa. 2003) (referencing *Werwinski*, 286 F.3d at 681). "However, in doing so, the court appeared to carve out a 'limited exception to the economic loss doctrine for fraud-in-the-inducement claims if the fraud is extraneous to the contract and not interwoven with the breach of contract.'" *Id*. (citing *Foster*, 2002 WL 31991114 at *2 (referencing *Werwinski*, 286 F.3d at 681)). "In reaching this conclusion, [the *Werwinski* Court] implied that the underlying rationale for the economic loss doctrine, that parties have a remedy in contract for misrepresentations regarding the subject matter of the contract, does not apply to fraud in the inducement claims that relate to matters other than the quality or character of [subject matter of the contract]." *Id*. (referencing *Werwinski*, 286 F.3d at 679).

9

As discussed above, Synergis sufficiently alleges a breach of duty independent of the contract.  Specifically, Synergis alleges that Gratz "deliberately concealed" its probation, and the effect that probation had on one of its major partners.  (Def.'s Amend. Countercl., ¶ 61.)  Accepting Synergis's allegations as true, the economic loss doctrine does not bar Synergis's fraudulent misrepresentation claim.

Gratz finally contends that in order to satisfy a claim for fraudulent misrepresentation, Synergis has to allege an *affirmative* misrepresentation rather than an omission as alleged in Synergis's Amended Counterclaim.  It is "'a well-established rule that deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than an intentional false affirmation.'"  *Fox's Foods*, 870 F. Supp. at 609 (citing *Marian Bank v. Intern. Harvester Credit Corp.*, 550 F. Supp. 456, 461 (E.D. Pa. 1982), *aff'd*, 725 F.2d 669 (3rd Cir. 1983)).  Gratz's argument that an omission can't constitute a fraudulent misrepresentation is unpersuasive[1].

For these reasons, Synergis has alleged sufficient facts to show that the fraudulent misrepresentation claim is facially plausible.  Gratz's motion to dismiss Count III is denied.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[1] Gratz only contends the "misrepresentation" element of a fraudulent misrepresentation claim.  The Court will therefore assume for purposes of this motion that the other elements are uncontested.