IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GRATZ COLLEGE,** | : | Civil Action Number: |
| Plaintiff, | : | 2:14-cv-06966-PD |
| | : | |
| v. | : | |
| | : | |
| **SYNERGIS EDUCATION, INC.,** | : | |
| Defendant. | : | |

**PLAINTIFF GRATZ COLLEGE'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION *IN LIMINE* TO LIMIT THE TRIAL
<u>TESTIMONY OF DEFENSE DAMAGES EXPERT MICHAEL MILANI</u>**

i

**Table of Contents**

I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................1

    A.  Mr. Milani's Report Includes Impermissible Legal Analysis................................2

    B.  Mr. Milani's Opinions Regarding the Issue of Mitigation ....................................3

    C.  Issues with the Damage Analysis as Contained in the Milani Report..................................................................................................................4

II. LEGAL ARGUMENT.........................................................................................................5

    A.  Legal Standard ........................................................................................................5

    B.  Mr. Milani Should Be Barred from Testifying at Trial About Any Legal Analysis or Conclusions ................................................................................6

    C.  Mr. Milani Should Be Barred from Testifying at Trial About Mitigation..................................................................................................................7

        1.  Mr. Milani Is Not Qualified to Opine Regarding Alternative Service Providers ..................................................................8

        2.  Mr. Milani's Opinions Regarding Gratz' Mitigation Efforts Are Unreliable...............................................................................10

        3.  Mr. Milani's Opinions Include Impermissible Legal Analysis.....................................................................................................13

    D.  Mr. Milani Should Be Barred from Testifying at Trial about Utilizing a Discount Rate in Any Calculation of Lost Profits ...............................13

    E.  The Milani Report Should Be Redacted to Omit All Mention of the Issues as to Which Mr. Milani Should Be Barred from Testifying at Trial..........................................................................................................15

III. CONCLUSION...................................................................................................................16

# Table of Authorities

**Cases**

*Brill v. Marandola*, 540 F. Supp. 2d 563 (E.D.Pa. 2008) ............................................................11, 13

*Crawford v. SAP America, Inc.*, 147 Fed. Appx. 234 (3d Cir. April 7, 2005) ...............................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................................5, 6

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ..................................................................6, 11

*Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees*, 153 F. Supp. 2d 736 (E.D.Pa. 2001) ...................................................................6

*General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512 (1997) ...........................................11

*Habiak v. Lehigh Valley Hospital*, 2006 WL 560149 (E.D. Pa. March 3, 2006) .........................10

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) ................................................................................6

*JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888 (E.D.Pa. April 15, 1998) .............................................................................................................5, 11

*Krys v. Aaron*, 2015 WL 3660332 (D.N.J. June 12, 2015) ............................................................16

*Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 2014 Pa. Super. 173, 98 A.3d 645 (Pa. Super. 2014) .......................................................................14

*Pennsylvania Trust Co. v. Dorel Juvenile Group, Inc.*, 851 F. Supp. 2d 831 (E.D.Pa. 2011) ...............................................................................................................6, 8, 10

*Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252 (3d Cir. 2008) ................................................7, 13

*Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, 1998 WL 721081 (E.D.Pa. Oct. 14, 1998) ..............................................................................................................5

*Trust Co. of Glen Rock v. Shrewsbury Furniture & Mfg. Co.*, 104 Pa. Super. 564, 158 A. 641 (Pa. Super. 1932) .............................................................................................14

*U.S. v. Velasquez*, 64 F.3d 844 (3d Cir. 1995) ...............................................................................5

**Rules**

FED. R. EVID. 702 ...................................................................................................................5, 6, 8

Plaintiff, GRATZ COLLEGE ("**Gratz**" or "**Plaintiff**"), by and through its undersigned counsel, files this Memorandum of Law in support of its Motion *in Limine* to Limit the Trial Testimony of Defense Damages Expert Michael Milani ("**Motion**") to preclude Mr. Milani from testifying at trial as to his legal analysis or conclusions, issues related to mitigation, and the application of a discount rate.

I.     <u>**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**</u>

Gratz filed this action against its vendor, SYNERGIS EDUCATION, INC. ("**Synergis**" or "**Defendant**") asserting causes of action for 1) breach of the parties' Academic Program Services Agreement (herein, the "**APSA**" or "**Contract**")); and 2) tortious interference with contract with respect to Gratz' vendor relationship with its historical principal educational partner, REGIONAL TRAINING CENTER ("**RTC**"). *See generally*, Amended Complaint [Docket ("**Dk.**") 5].

On or about September 25, 2015, Synergis served a document titled "Expert Report of Michael K. Milani" ("**Milani Report**") as part of its expert discovery and in response to Gratz' expert report on damages rendered by Stephen J. Scherf, CPA. *See* Milani Report, attached hereto as **Exhibit A**[1]. Mr. Milani was deposed on October 20, 2015 ("**Milani Dep.**", relevant portions of which are attached hereto as **Exhibit B**) and on October 23, 2015 ("**Milani Dep. II**", relevant portions of which are attached hereto as **Exhibit C**)[2].

Mr. Milani's proffered opinions, as stated in the Milani Report and confirmed in his deposition, include: a) impermissible legal analysis and conclusions; b) opinions that are beyond his expertise; c) opinions that are contrary to Pennsylvania law; and d) opinions that lack factual foundation.

---

[1] Also marked as Exhibit 504 in Mr. Milani's deposition dated October 20 & 23, 2015.
[2] Counterclaim Plaintiff, Synergis did not serve an expert report on the damages alleged in its Counterclaim.

1

A. **Mr. Milani's Report Includes Impermissible Legal Analysis**

Mr. Milani, who has never attended law school[3], included in his Report legal opinions. For example, Section 8 of the Milani Report is a layman's legal analysis of the law of damages in Pennsylvania[4]. Mr. Milani's legal analysis begins with the following paragraphs:



---

[3] Mr. Milani's CV attached to his Report recites that he has a B.S. with concentration in Finance and an M.B.A. with a concentration in Finance, Marketing and Strategy. Nowhere in the CV is there any reference to any training or education in the law. *See* Michael K. Milani Curriculum Vitae, attached as Exhibit 1 to Milani Report, **Ex. A**.

[4] Nowhere in the Milani Report does he reference any co-authorship by anyone trained in the law. *See generally*, Milani Report, **Ex. A**.

Milani Report, **Ex. A**, § 8, at 15.

The remainder of the section continues to discuss Mr. Milani's legal analysis.  As one with no legal education, Mr. Milani is not qualified to render a legal opinion to the jury.  Furthermore, Mr. Milani does not cite any case or statute in which the cited portions of the Restatement (Second) of Contracts §347 have been adopted in Pennsylvania.  As a non-lawyer, Mr. Milani is, no doubt, unaware of the importance of actual citations.  In short, Mr. Milani has strayed into territory he is not trained to traverse.

      **B.**     <u>**Mr. Milani's Opinions Regarding the Issue of Mitigation**</u>

In the above partially quoted Section 8 of the Milani Report, "Monetary Recovery Available for the Asserted Claims," Mr. Milani opined on the standard for mitigation even though he is not a licensed attorney, received no assistance from legal counsel in preparing this section of his report, and has admitted he is not an expert on the legal standards related to mitigation.  *See* Milani Dep., **Ex. B**, at 18:3-18, 30:3-4 & 31:24 – 32:7; 33:6-9; Milani Dep. II, **Ex. C**, at 33:13-18.

Mr. Milani's opinion includes an analysis of Gratz' mitigation efforts and concludes that there were "varying degrees of mitigation;" that Gratz' President identified a number of mitigation alternatives; but that the mitigation chosen by Gratz and discussed in the Scherf Report fell "short of what a properly mitigated lost profit calculation would look like and would consider."  *See* Milani Dep. **Ex. B**, at 123:13-22.  This conclusion was made without any identifying basis for such an analysis.  Mr. Milani's entire mitigation analysis is based on the "presumption/assumption" of the existence of an "alternative service provider", not on the facts in the case.  Mr. Milani cites no document nor the testimony of any witness supporting his propositions.  Furthermore, the Milani Report makes assumptions regarding the expense to Gratz in procuring an alternative service provider without identifying any facts or otherwise showing

3

what those expenses would be. *See* Milani Dep. II, **Ex. C**, at 26:4-12. Indeed, Mr. Milani was unable to identify any such evidence during his deposition. *See id*. Lastly, during his deposition, Mr. Milani admitted that he had "no problem" with Gratz' mitigation efforts in launching its own Master of Science in Management ("**MSM**") program, but merely challenged that it *understates the other possible mitigation in which it could have engaged*, again without any supporting evidence. *See* Milani Dep., **Ex. B**, at 139:14 – 140:10.

### C. Issues with the Damage Analysis as Contained in the Milani Report

The Milani Report includes an extensive discussion of applicable discount rates in Section 9.5.4. *See* Milani Report, **Ex. A**, § 9.5.4, at 30. However, he testified at his deposition to a lack of knowledge regarding whether Pennsylvania courts discount future profits to present value in breach of contract actions. *See* Milani Dep., **Ex. B**, at 107:18 – 108:18. The Milani Report identifies no legal authority requiring a discount of lost future profits in a breach of contract action, nor does the report identify any evidence to show that the parties' contract (Exhibit 508)[5] required any such discount.

Also, although the Milani Report disputes the alternative 10.71% discount rate identified in the Scherf Report, Mr. Milani did not calculate or present any higher discount rate to a reasonable certainty in the Milani Report. He testified that he did not make such a calculation because he did not "have an opinion specific to what the discount rate should be." *See* Milani Dep., **Ex. B**, at 27:5 – 28:3.

Gratz respectfully requests that the Court bar Mr. Milani from testifying to: a) legal analysis or conclusions relating to the law of damages in Pennsylvania; b) issues related to the availability, reasonableness or amount of any mitigation; and c) the applicability or the amount

---

[5] Attached as an exhibit to the Amended Complaint and incorporated herein by reference pursuant to Fed R. Civ. P. 10(c).

of any discount to any calculation of lost profits.  Further, Gratz respectfully requests that the Court require the Milani Report, if used as an exhibit at trial, to be redacted to exclude such subjects.

## II.     LEGAL ARGUMENT

### A.     Legal Standard

The standard for the admission of expert testimony is stated in FED. R. EVID. 702 as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Under the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the court assumes "a gatekeeping role" to protect against admitting expert testimony that is unreliable or unhelpful to the trier of fact.  *See Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, 1998 WL 721081, at *10 (E.D.Pa. Oct. 14, 1998), *citing U.S. v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995).  As such, the "Rules of Evidence require that the trial judge make a preliminary assessment to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"  *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888, at *5 (E.D.Pa. April 15, 1998) (McGirr Kelly, J.).

5

To determine admissibility of evidence under *Daubert*, the court must engage in a two-step inquiry. "First of all, the proffered 'expert' must be qualified to express an expert opinion. … Secondly, the proffered expert opinion must be reliable." *Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees*, 153 F. Supp. 2d 736, 740-41 (E.D.Pa. 2001), *quoting In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

Moreover, "[t]he proponent of the testimony bears the burden of establishing its admissibility by a preponderance of the evidence." *Pennsylvania Trust Co. v. Dorel Juvenile Group, Inc.*, 851 F. Supp. 2d 831, 836 (E.D.Pa. 2011) *citing Daubert*, 509 U.S. at 592, n.10.

### B. Mr. Milani Should Be Barred from Testifying at Trial About Any Legal Analysis or Conclusions

Mr. Milani's proffered testimony regarding any legal analysis or conclusions is inappropriate expert testimony and is inadmissible. Mr. Milani should be barred from so testifying and the Milani Report should likewise be redacted to exclude such testimony.

First and foremost, Mr. Milani makes clear that the three people in his firm who contributed to the drafting of the Milani Report are all non-lawyers trained in finance, but not in law. Furthermore, no one trained in the law participated in the drafting of the Milani Report, including the legal analysis contained in Section 8 discussed above.

A putative expert must have 'specialized knowledge'—which can be based on 'practical experience as well as academic training and credentials'—on the topic to which he seeks to testify." *Pennsylvania Trust Co.*, 851 F. Supp. 2d at 835; *see also* FED. R. EVID. 702. "[A]t a minimum, a proffered expert witness … must possess skill or knowledge greater than the average layman…." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

6

It is clear that Mr. Milani and his associates lack specialized knowledge, skill, experience or training in the law[6]. FED. R. EVID. 702 requires the showing of such expertise before one is permitted to opine on a subject, including a legal analysis. Mr. Milani's legal opinions fail the first of the *Daubert* test as Mr. Milani is simply not an expert on legal analysis or the law. There is nothing in Mr. Milani's education or background that could allow a determination that Mr. Milani is in any way qualified to render legal opinions or give legal analysis.[7]

### C. Mr. Milani Should Be Barred from Testifying at Trial About Mitigation

As discussed above, in Section 9.5.3 of the Milani Report, Mr. Milani purports to opine regarding the impact of the duty to mitigate[8] upon Gratz' damages. *See* Milani Report, **Ex. A**, § 9.5.3, at 26-30. Although Mr. Milani was admittedly retained as a damages expert to perform and opine concerning assessment of damages, rather than calculating and assessing damages, Mr. Milani seeks to present improper expert testimony i) that is beyond his area of expertise; ii) that is grounded on speculative assumptions; and iii) regarding his legal analysis and conclusions

---

[6] Mr. Milani, in his second deposition in response to a question regarding his expertise in the legal requirements concerning mitigation volunteered a total lack of expertise in legal matters:

> Q. Are you an expert on the legal standard related to mitigation?
> A. No, sir. I have experience dealing with mitigation related issues in my work, **but I am not an expert on any legal matters**. I'm not offering any legal opinions or expertise.

*See* Milani Dep. II, **Ex. C**, 33:13-18 (emphasis added).

[7] Interestingly, Mr. Milani had been previously barred from testifying for this very same reason. *See* Milani Dep., **Ex. B**, at 52:2-21 (Mr. Milani's testimony was barred because it was on the legal issue of calculating a statutory fine).

[8] To prove the affirmative defense of failure to mitigate, one must show: "(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258-59 (3d Cir. 2008).
.

concerning Gratz' duty to mitigate damages.  Mr. Milani's proffered opinions are inadmissible and he should be barred from testifying about mitigation.

        1.        Mr. Milani Is Not Qualified to Opine Regarding Alternative Service Providers

As noted in the preceding section, "[a] putative expert must have 'specialized knowledge'—which can be based on 'practical experience as well as academic training and credentials'—on the topic to which he seeks to testify." *Pennsylvania Trust Co.*, 851 F. Supp. 2d at 835; *see also* FED. R. EVID. 702.  Here, Mr. Milani's proffered opinion regarding the existence of alternative service providers is nothing more than an impermissible personal opinion of a non-expert layman.

By his own words, Mr. Milani is not an expert on colleges or higher education and was retained only as a damages expert to opine regarding the amount of damages suffered by Gratz and to dispute Scherf's calculation of damages.  *See* Milani Report, **Ex. A**, § 2, at 3; Milani Dep., **Ex. B**, at 10:19 – 11:2; 75:24 – 76:7; Milani Dep. II, **Ex. C**, at 33:10-12.[9]  His education and professional experiences are limited to finance and assessment of damages and his Curriculum Vitae does not identify any training or experience concerning the operation and/or needs of colleges or higher education.  *See* Michael K. Milani Curriculum Vitae, attached as Exhibit 1 to Milani Report, **Ex. A**.  Mr. Milani was neither retained as an expert on colleges or higher education nor does Mr. Milani have any knowledge, credentials or experience concerning the

---

[9] When asked about his expertise during his second deposition, Mr. Milani admitted his own lack of expertise:

    Q.    Sir, are you an expert in colleges or higher education and their credentialing?
    A.    No, sir, I am not.

*See* Milani Dep. II, **Ex. C**, at 33:10-12.

relative values of alternative college and university service providers in general, or about Gratz' particular needs with respect to service providers.

Despite the lack of specialized knowledge regarding colleges and university service providers, Mr. Milani purports to opine regarding the availability of "different service providers with capabilities similar to those of Synergis and/or RTC" that Gratz should have turned to. *See* Milani Report, **Ex. A**, § 9.5.3, at 27. Mr. Milani admitted that his opinion—that Gratz should have turned to any of the alternative service providers he identified in his report—was based on only two sources: i) "independent research that [his company] performed internally [ ] to identify what [they] believed were alternative service providers with capabilities similar to Synergis"; and ii) unspecified conversations with unidentified personnel at Synergis regarding the list of alternative service providers identified by his company. *See* Milani Dep., **Ex. B**, at 122:16 – 123:12; *see also* Milani Report, **Ex. A**, § 9.5.3, at 27.

As to the "independent research" performed by his company, Mr. Milani does not state the qualification of such unidentified personnel at his company who conducted the research and came up with the list of alternative service providers nor does he state that such unidentified personnel possesses any skill or knowledge greater than the average layman in identifying and determining whether the service provider offered capabilities similar to Synergis such that it could potentially serve as an alternative service provider.[10] Moreover, the skill or knowledge of Synergis regarding college and university service providers cannot be conferred upon Mr. Milani in determining Mr. Milani's qualification to provide expert opinion regarding such topics. In

---

[10] Mr. Milani, in his deposition, identified two people from his company, Sheryl Mikols and Sean O'Connell, who assisted in the authoring of the Milani Report. *See* Milani Dep., **Ex. B**, at 16:4-22. Although it is unclear whether Ms. Mikols and/or Mr. O'Connell performed the referenced "independent research," what is clear is that neither Ms. Mikols nor Mr. O'Connell appears to have any specialized knowledge regarding colleges or university service providers. *Id.* at 17:5-13.

order for Mr. Milani to testify regarding alternative service providers, Mr. Milani, separately and independent of Synergis, must possess the specialized knowledge regarding alternative service providers.[11]

Tellingly, the Milani Report predominately cites internet websites for alternative service providers. Such an endeavor is woefully inadequate to qualify Mr. Milani as an expert regarding college and university service providers. If that were not the case, any person facile with Google or another web browser would instantly be transformed into an expert merely by looking up something on the Internet. And of course, lacking specialized knowledge himself, Mr. Milani has not established that the websites he consulted are reliable sources for the conclusions he reaches.

Simply put, not only is the proffered opinion regarding alternative service providers beyond the scope of Mr. Milani's claimed expertise in damages assessment or finance, Mr. Milani lacks special skill or knowledge greater than the average layman regarding college and university service providers such that he can provide reliable and helpful testimony. As such, Mr. Milani should be barred from testifying concerning alternative service providers.

2. Mr. Milani's Opinions Regarding Gratz' Mitigation Efforts Are Unreliable

Apart from lacking qualification to render any opinion regarding alternative service providers, Mr. Milani's proffered opinions lack reasonable basis and should thus be excluded.

An expert opinion will be found to be unreliable if it fails to contain a reliable basis upon which the conclusions in the report could be based. *See Habiak v. Lehigh Valley Hospital*, 2006 WL 560149, at *1 (E.D. Pa. March 3, 2006) (Sanchez, J.); *see also Pennsylvania Trust Co.*, 851 F. Supp. 2d at 836 ("When an expert offers his opinion based on experience, 'he must apply his

---

[11] In any event, Mr. Milani has failed to establish that the person or persons at Synergis had any such specialized knowledge. His report, rather, seems to suggest that they did not.

experience reliably to the facts; his opinions must be well-reasoned, grounded in his experience, and not speculative.'") (citation omitted).  Further, it is well-settled that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *JMJ Enterprises*, 1998 WL 175888, at *6-7, *quoting General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 519 (1997).  "Expert testimony that is based on speculation or unrealistic assumptions" is not admissible.  *See JMJ Enterprises*, 1998 WL 175888, at *6.

A damage expert's role is simply "to calculate hypothetical damages given an assumed set of facts; so long as those assumed facts are reasonably based on the evidence in the record." *Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D.Pa. 2008).  It has long been the case in this Circuit that a damages expert's testimony "must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *See Elock*, 233 F.3d at 754 (citation omitted) (excluding expert opinion that was based on several empirical assumptions that were not supported by the record).

In this case, despite the fact that the Scherf Report identifies and quantifies Gratz' actual mitigation efforts, the Milani Report instead challenges Gratz' actual mitigation by critiquing the Scherf Report's alleged failure to "adequately account for Gratz' mitigation opportunities", *i.e.*, alternative service providers.  *See* Milani Report, **Ex. A**, at 26.  But, as Mr. Milani admits, this critique is based **solely** upon his speculation.  In his deposition, Mr. Milani admitted that in opining regarding the availability of alternative service providers, he assumed that 1) the same level and bundle of services would be provided by the alternative service provider; 2) the same revenue sharing would be provided by the alternative service provider; 3) the cost to Gratz of engaging the alternative service provider would be the same; and 4) by the time an agreement is

reached with the alternative service provider, probation would have been withdrawn.  *See* Milani Dep., **Ex. B**, at 134:18 – 135:6; 135:11-15; 137:16-20; Milani Dep. II, **Ex. C**, at 26:4-12.  Although Mr. Milani offers several different companies as alternatives, he fails to reference any evidence—perhaps because there is none—to support his assumption that the alternative service providers would have mitigated damages.  There is nothing in the record to support the assumptions upon which Mr. Milani bases his conclusion.

Moreover, the Milani Report further speculates that mitigation by alternative service provider, for which he advocates, is **reasonable** mitigation, although such mitigation would not even begin before the summer of 2016.  *See* Milani Dep. II, **Ex. C**, at 24:23 – 25:1.  In fact, the Milani Report rejects out of hand Gratz' actual mitigation efforts in favor of alleged mitigation efforts Mr. Milani "assumed" based on self-serving, hearsay statements of unspecified Synergis personnel and the internet research on alternative service providers performed by unidentified personnel from his own company.  Mr. Milani opines that "Gratz should have and should currently be looking for an alternative service provider to step into the shoes of Synergis."  *See* Milani Dep., **Ex. B**, at 120:12-22.  That is simply not a proper expert opinion based on the analysis of the evidentiary record by one with specialized knowledge.

At its core, Mr. Milani did not reach an opinion as to the amount of any reasonable mitigation that Gratz allegedly failed to perform under the circumstances.  The fact that Mr. Milani made **no** affirmative calculation as to the amount of any reasonable mitigation—*i.e.*, the amount an assumed contract with any proffered alternative service provider would have allegedly reduced the lost profits damages in dispute—is particularly problematic as it fails to meet the second and third mitigation proof elements of the affirmative defense of mitigation.  *See*

*Prusky, supra*, 532 F. 3d at 258-59 (second and third elements are that the mitigation actions would have reduced the damages and the amount of that reduction).

Synergis simply cannot meet its burden regarding the admissibility of Mr. Milani's mitigation opinion when his opinions are grounded significantly, if not entirely, on "presumptions/assumptions" without reference to, let alone citation to, any evidence. *Cf. Crawford v. SAP America, Inc.*, 147 Fed. Appx. 234, 239 (3d Cir. April 7, 2005) (rejecting plaintiff's damages expert report that relied on hypothetical damage claims in favor of data pertaining to [defendant's] actual performance"). Accordingly, Mr. Milani should be barred from testifying on the subject of mitigation at trial.

        3.      <u>Mr. Milani's Opinions Include Impermissible Legal Analysis</u>

In addition to identifying alternative service providers, Mr. Milani states his legal analysis of Gratz' obligation to mitigate damages and opines regarding Gratz' alleged failure to mitigate damages. *See e.g.*, Milani Report, **Ex. A**, at 29 ("████████████████████████████████████████████████████████████████████████████████████████████████████"). Mr. Milani's opinion regarding reasonable actions Gratz ought to have taken is nothing more than an impermissible personal opinion of a non-expert regarding legal principles. As such, Mr. Milani's intended testimony is inadmissible and Mr. Milani should be barred from so testifying. *See Brill, supra*, 540 F. Supp. 2d at 570-71.

    **D.**    **<u>Mr. Milani Should Be Barred from Testifying at Trial about Utilizing a Discount Rate in Any Calculation of Lost Profits</u>**

As noted above, Mr. Milani also purports to opine regarding the application of a discount rate in the calculation of lost profits. *See* Milani Report, **Ex. A**, § 9.5.4, at 30-33. Mr. Milani's opinions are neither supported by Pennsylvania law nor by any discount rate calculated by him to

13

a reasonable certainty.  Accordingly, Mr. Milani's testimony regarding a discount rate should be excluded.

Under Pennsylvania law[12], the applicability of a discount rate to reduce future damages to present value in a contract action is governed by the terms of the contract.  *See Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 2014 Pa. Super. 173, 98 A.3d 645, 657 (Pa. Super. 2014) ("[i]n order to reduce damages to present value, it must be a negotiated term contained in the contract"), *appeal denied*, 117 A.3d 1281 (Pa. June 24, 2015), *citing Trust Co. of Glen Rock v. Shrewsbury Furniture & Mfg. Co.*, 104 Pa. Super. 564, 158 A. 641, 643 (1932) (same).

Here, the APSA lacks any provision requiring the imposition of a discount rate to any calculation of lost future profits or reduction of damages to net present value.  Indeed, Mr. Milani admitted in his deposition that the APSA did not include any provision requiring the application of a discount rate to lost profits calculations for any breach of the agreement.  *See* Milani Dep., **Ex. B**, at 108:19 – 109:21.  If the sophisticated drafter of the contract, Synergis, had intended to include in its standard form contract provisions regarding the limitation of damages (such as discounting to present value), then Synergis would have provided for such limitations in the APSA.  But apparently Synergis elected not to do so.[13]  As such, in the absence of any contractual provision reducing damages, there is no legal basis under Pennsylvania contract law to apply a discount rate to the calculation of lost future profits.  Thus, Mr. Milani should be

---

[12] The APSA specifies that it is to be governed and construed under Pennsylvania law.  *See* APSA, Exhibit A to the Amended Complaint [Dk. 1], Art. 10.11, at 33.

[13] N.b., every page of the APSA is copyrighted by Synergis and there was testimony from Synergis personnel that the APSA is Synergis' standard contract form (*see* Deposition of Joshua Pierce, relevant portions of which are attached hereto as **Exhibit D**, at 69:22-25); thus, Synergis certainly had ample opportunity to include a requirement of discounting future lost profits to present value had it so desired.  *See* APSA, Exhibit A to the Amended Complaint [Dk. 1].

barred from testifying at trial, and his report correspondingly redacted, about the application of a discount rate to any lost profit calculation.[14]

Even if, *arguendo*, a discount rate were to apply to a lost profit calculation, Mr. Milani should be barred from opining about the Scherf Report's alleged understated discount rate. Although Mr. Milani disputes the alternative 10.71% discount rate identified in the Scherf Report, Mr. Milani admitted in his deposition that he did not calculate any higher discount rate to a reasonable certainty and has no "opinion specific to what the discount rate should be." *See* Milani Dep., **Ex. B**, at 27:5 – 28:3[15].

Thus, as Mr. Milani's intended discount rate testimony is not supported either by Pennsylvania law or by any discount rate calculated by him to a reasonable certainty, any such testimony cannot assist the trier of fact to understand the evidence or to determine an issue of fact nor meet the standards required under *Daubert* or FED. R. EVID. 702. Mr. Milani, therefore, should be barred from providing any testimony regarding the application or the rate of the discount rate and the Milani Report should be redacted accordingly.

### E. The Milani Report Should Be Redacted to Omit All Mention of the Issues as to Which Mr. Milani Should Be Barred from Testifying at Trial

Where, as here, Mr. Milani's trial testimony should be limited as requested herein, it is correspondingly appropriate that the Court require revisions, in the form of redactions, to the

---

[14] Mr. Scherf, in his report, specifically refrained from rendering any opinion as to the legal determination of the applicability of a discount rate to reduce damages to present value and merely provided an alternative calculation of damages to be considered if it were determined that damages should be reduced to present value. *See* Scherf Report, attached hereto as **Exhibit E**, at 6, n.7 & at 11, n. 14.

[15] In his deposition Mr. Milani said:

> A.  I do not have an opinion specific to what the discount rate should be,…"

*See* Milani Dep., **Ex. B**, 27:24 – 28:1.

Milani Report to omit all matters as to which Mr. Milani should be barred from testifying at trial. *See Krys v. Aaron*, 2015 WL 3660332, at *20 (D.N.J. June 12, 2015) (court ordered redaction of expert reports consistent with limitations on testimony). Attached to the Motion's proposed form of order (as Exhibit 1 thereto) is the proposed form of redacted Milani Report that omits the matters about which Mr. Milani should be barred from testifying at time of trial.

### III. CONCLUSION

For the foregoing reasons, plaintiff, GRATZ COLLEGE, respectfully requests that this Court enter an Order in a form submitted herewith granting the Motion and barring defense damages expert, Michael Milani, from testifying at trial as to any legal analysis or conclusions as well as issues related to mitigation and discount rate.

Respectfully submitted,

Dated: December 1, 2015

**FELLHEIMER & EICHEN LLP**

*/s/ Alan S. Fellheimer*
Alan S. Fellheimer
John J. Jacko, III
PA Attorney ID Nos. 09842 & 67477
Two Liberty Place
50 South 16th Street, Suite 3401
Philadelphia, PA 19102
(T) 215.253.6630
*Attorneys for Plaintiff*
*Gratz College*